The statutes, allowing suits to be brought in other counties than those where trees are cut (*Sess. L. 1861, p. 173*), were directly aimed at non-resident employers, and all of them provide for trespass and not for case. We do not conceive that there is any well settled principle which conflicts with this policy, and even if it were plainly otherwise at common law, there is no mistaking the policy of the statutes, which would be rendered nugatory by any construction that would exempt absent employers from being sued in form of trespass.

We think the action was properly brought, and that the evidence tended to prove no other relation than that of master and servant.

Judgment must be reversed with costs, and a new trial granted.

The other Justices concurred.

---

## The People v. William Schweitzer.

*Criminal law: Evidence.* On the trial of a prisoner for a criminal offense it is erroneous to admit evidence of another and distinct offense, though of the same kind with that charged; and the fact that such evidence tends to corroborate a witness, who has testified to certain confessions of the defendant, does not render it admissible.

*Credibility of accomplices a question for the jury.* It is not error for the court to refuse to charge the jury that it is not safe to convict a defendant on the uncorroborated testimony of an accomplice, or any number of accomplices. This is exclusively a question for the jury.—*People v. Jenness, 5 Mich., 305.*

*Heard July 7. Decided July 12.*

Exceptions certified from the Recorder's Court of the city of Detroit.

The defendant was charged with the larceny from the

Lake Shore & Michigan Southern Railway Company of three pairs of Arctic overshoes, seven pairs of boys' boots, twenty-one shoe-brushes, one counter-brush, two pairs of gaiters and one box of hats.    On the trial, one John T. Stewart was called and sworn as a witness on behalf of the People, and testified in substance as follows: That he knew the defendant; that on or about the 14th of March (the time of the larceny alleged in the information), the defendant took him into a small office in the cattle-yard of the Detroit & Milwaukee Railroad Company, in the city of Detroit, and into the loft or vacant space above said office, and showed him a box like the one produced in court, opening the same way, and with nails projecting in the same manner, in which box there were some small boots, Arctic overshoes, six blacking-brushes, a counter-brush and a box of flower or chalk; that he asked defendant where they came from, and defendant told him they came from the cars; that defendant's father kept the cattle-yard in which the office was; that this loft was a vacant space not used for any thing, only about two feet high from the peak of the roof to the joists; that this office was sometimes locked and sometimes unlocked; that he went in there a second time with defendant and O'Leary; that the defendant took one pair of big Arctic overshoes from the box, and said he was going to keep them for his father to use; that defendant took out the six brushes and the overshoes; that defendant told him he (defendant) took the brushes and overshoes to his father's store on the corner of Franklin and Hastings streets, in said city; that he and defendant tried to sell a pair of them and could not; that they took one pair and he sold them for one dollar to Con. O'Leary; that they used the place once before.

The prosecuting attorney then asked this question: "Did you use it before with defendant for storing pur-

poses?" To which the defendant's counsel objected, for the reason that it was immaterial and irrelevant, and related to another and distinct transaction from the one charged in the information. The court overruled the objection, and the defendant's counsel excepted. The witness answered: "Defendant and myself, and one James Dumphy, about a month or two months before, did use it for storing tobacco."

James Dumphy was then sworn as a witness, and the following question was put to him by the prosecuting attorney, viz: "What do you know about defendant and you and Stewart stealing tobacco from the cars of the Lake Shore & Michigan Southern Railroad Company, and storing in the loft in the office at the cattle-yard?"

Objected to by defendant's counsel, for the reason that it was irrelevant, and related to a different larceny from the one charged in the information. The counsel for the prosecution insisted on the testimony, on the ground that it tended to show prior intimacy between Stewart and Schweitzer, and that Schweitzer had used the loft for the purpose of storing stolen property before. Objection overruled by the court, and exception taken by defendant's counsel.

The witness answered: "We were all three engaged in stealing that tobacco. We went in at night to one of the cars on the side track of the Lake Shore & Michigan Southern Railroad, and took a caddy or drum of tobacco out of the car, and left it on the fence; then we handed it over the fence to Schweitzer, and then we three put it in the same loft; this was some time before the matter of the boots and shoes."

Other evidence was also given, which it is unnecessary to set forth. The counsel for defendant requested the court to charge the jury: "That it is not safe to convict

a defendant on the uncorroborated testimony of an accomplice, nor upon the uncorroborated testimony of any number of accomplices."

The court refused to charge them as requested, and the counsel for the defendant excepted. The jury rendered a verdict of guilty.

*S. Larned* and *Fred. A. Baker,* for the defendant.

*Dwight May, Attorney General,* for the People.

CHRISTIANCY, J.

We see no legal ground upon which the witness, Dumphy, could have been allowed to testify to the commission by the defendant of another and distinct larceny from that for which he was on trial. The general rule is well settled that the prosecution are not allowed to prove the commission of another and distinct offense, though of the same kind with that charged, for the purpose of rendering it more probable in the minds of the jury that he committed the offense for which he is on trial; and this would be the natural and inevitable effect upon the minds of the jury, of the admission of such evidence, on whatever ground or pretense it might be admitted; and the defendant would thus be prejudiced on the trial of the offense charged, by proof which he has no reason to anticipate, of an offense for which he is not on trial, and to which, when properly called upon to defend, he may have a perfect defense. There is nothing to take this case out of this general rule, and to admit such evidence in this case would be to admit it in all.

The ground, on which the court admitted it, was that it tended to show prior intimacy between the defendant and one Stewart, a witness in the cause, who had testified to certain confessions of the defendant, and thus to corroborate him. This, however, was clearly but a pretense, since

such intimacy could have been shown without giving evidence of another larceny; but if it could not, still the evidence of such distinct offense could not be admitted for the collateral, or at least merely subordinate, purpose of corroborating a witness in the cause. This would be to give more importance to such subordinate or incidental question than to the principal question in issue, the guilt or innocence of the party on trial. The admission of this evidence was therefore clearly erroneous.

There was no error in the refusal of the court to charge that it is not safe to convict a defendant on the uncorroborated testimony of an accomplice, or any number of accomplices. This was exclusively a question for the jury, and we refer to *People v. Jenness, 5 Mich., 305,* for the principle involved and the duty of the court in charging the jury.

But, for the error above explained, a new trial must be awarded. Let it be so certified to the recorder's court.

The other Justices concurred.