## PEOPLE *v.* HAWKINS.

1. FOREIGN CORPORATIONS—RIGHT TO DO BUSINESS IN MICHIGAN—CONSTRUCTION OF STATUTE.

   3 How. Stat. § 4161*d*6, being section 37 of the act relating to the incorporation of domestic manufacturing and mercantile corporations, which provides that foreign corporations organized for any of the purposes contemplated by said act, upon recording copies of their articles of association and appointing a resident agent for service of process, may carry on business in this State, and shall enjoy all the rights and privileges, and be subject to all the restrictions and liabilities, of corporations existing under said act, does not prohibit foreign corporations from doing business within this State until they have complied with such conditions, or invalidate contracts made by them, but, rather, prescribes the terms upon which such corporations, if they so desire, may become entitled to the benefits conferred by the act upon domestic corporations of similar character. McGRATH, C. J., dissenting.

2. SAME—EMBEZZLEMENT BY AGENT—DEFENSES.

   An agent of a foreign corporation cannot defend a charge of embezzlement preferred under 2 How. Stat. § 9151, upon the ground that the corporation was prohibited from doing business within this State by reason of a non-compliance with the statutory conditions. McGRATH, C. J., dissenting.

3. EMBEZZLEMENT—SUFFICIENCY OF INFORMATION.

   2 How. Stat. § 9421, provides that, in a prosecution for embezzlement, proof of any embezzlement committed within six months

| 106 | 479 |
| 107 | 362 |

| 106 | 479 |
| 116 | 2 |
| 117 | 56 |

| 106 | 479 |
| 122 | 507 |
| e122 | 519 |
| f122 | 670 |

| 106 | 479 |
| 128 | 214 |

| 106 | 479 |
| 137 | 4 94 |

| 106 | 479 |
| f139 | 2445 |

| 106 | 479 |
| 143 | 6116 |
| 143 | 412 |
| 106 | 479 |
| 148 | 3177 |
| 106 | 479 |
| 153 | 6616 |

| 106 | 479 |
| 158 | 1330 |

next after the time stated in the indictment shall be sufficient to maintain the charge. An information charged embezzlement between two dates not more than six months apart. *Held*, that the defect, if any, in failing to allege a day certain, would be disregarded, under 2 How. Stat. §§ 9534, 9535, where the objection was not raised until after the jury had been sworn.

4. SAME—EVIDENCE.

In a prosecution for embezzlement, evidence of previous acts of like character is admissible to prove intent.

5. SAME—DEFENSES—LARCENY.

The fact that moneys wrongfully appropriated by a bookkeeper and assistant cashier first went into the cash drawer of his employer does not make the offense larceny, rather than embezzlement.

6. CRIMINAL LAW—INSTRUCTIONS TO JURY—ADMITTED FACTS.

It is not error for the court in a criminal case to recite the conceded facts in his charge to the jury, and to refuse an instruction that the ultimate determination of such questions rests with them, and that they are not absolutely bound by the opinion of the court thereon.

Exceptions before judgment from recorder's court of Detroit; Chapin, J. Submitted June 20, 1895. Decided September 27, 1895.

Norval A. Hawkins was convicted of embezzlement. Affirmed.

*F. A. Baker*, for appellant.

*Allan H. Frazer*, Prosecuting Attorney, and *Ormond F. Hunt*, Assistant Prosecuting Attorney, for the people.

HOOKER, J. The Standard Oil Company of Ohio, a foreign corporation, has for several years done business in Michigan, having a general office in Detroit, through which its business for a portion of the State was done. This business consisted principally in selling petroleum to customers in this State. The oil was, as a rule, shipped to Detroit in tank and other cars, and there stored until sold, being then reshipped. In some in-

stances, however, the oil was shipped direct from Ohio to the purchaser. All money received for sales of oil in that portion of the State that was within the jurisdiction of the Detroit office was sent to that office, and came to the hands of the defendant, who was bookkeeper and assistant cashier. He was convicted of embezzling $2,600 of the company's money, and the case comes here upon exceptions before sentence.

The errors complained of are said to be:

(1) The failure of the court to direct a verdict for de fendant, upon the ground that he was not the servant or agent of the Standard Oil Company, within the embezzlement statute, and that he embezzled none of its money.

(2) The insufficiency of the allegation of time in the information.

(3) The admission of testimony tending to show other acts of embezzlement.

(4) The failure to leave certain specified questions of fact to the jury.

(5) The refusal to instruct the jury that whether there was a valid and subsisting contract of employment was for the jury, and that they were not bound by the opinion of the court upon that subject.

1. The first question hinges upon the statute. 3 How. Stat. § 4161*d*6. This statute was added to the general act providing for the incorporation of domestic manufacturing companies, and was enacted in the year 1889. It provides that foreign corporations "organized * * * either wholly or in part for any of the purposes" contemplated by the act referred to, "upon recording copies of their charter or articles of incorporation, * * * as provided in section nine" of said act, "and upon filing * * * a resolution" authorizing any agent duly appointed to acknowledge service of process for the company, etc., "and appointing an agent for service of process," may carry on business in this State, and "shall enjoy all the rights and privileges, and be subject to all

the restrictions and liabilities, of corporations existing under this act." This corporation did not avail itself of the opportunity afforded by this statute, by filing its articles as therein provided. The theory upon which the first assignment of error rests is that the statute (section 4161*d*6) prohibits the non-complying foreign corporation from doing business in this State, and that, therefore, all contracts made by it are void, and all business done by it or upon its behalf is illegal; that it could neither acquire nor hold any property in this State, nor could it make a lawful contract of agency. The underlying question is, manifestly, the construction to be placed upon the statute; for, if it does not involve a prohibition of business by the corporation, the whole argument of defendant's counsel upon this branch of the case must fall.

That the States have the power to prescribe the terms upon which foreign corporations may carry on business within their respective limits, and to exclude them altogether, is generally admitted; and, to give effect to such laws, they may declare contracts made in contravention of such statutes to be invalid, as a more effective means of accomplishing the purpose of the State. And there are many cases which hold that contracts made by corporations, which are illegal or contrary to the settled policy of the State, are void, and cannot be enforced, though the statute does not in terms so provide. 8 Am. & Eng. Enc. Law, 333, and cases cited in note 1. And in the absence of a provision declaring the contracts void, the courts may refuse to enforce them, when the statutes suspend the doctrine of comity, as was held by this court in two recent cases. *Seamans* v. *Temple Co.*, 105 Mich. 400; *People's Mut. Ben. Society* v. *Lester*, 105 Mich. 716. But it is the established doctrine that, in the absence of statutes showing a contrary intent or policy, foreign corporations will be permitted to do business, and make contracts, which, under the doctrine of State comity, will be held valid, and enforced by the courts,

upon the presumption of acquiescence, which will arise from silence upon the subject. This doctrine is elaborately discussed in the case of *Bank of Augusta* v. *Earle,* 13 Pet. 519, and is uniformly recognized as the law. See *Thompson* v. *Waters,* 25 Mich. 244. Also, *Bank of British Columbia* v. *Page,* 6 Or. 433; *In re Comstock,* 3 Sawy. 221; *Wright* v. *Lee,* 2 S. D. 596, 4 S. D. 237.

The section in question is one added to the previously existing law providing for the incorporation of manufacturing and mercantile associations. Neither the language of the act, nor its title, appears to have been aimed at the exclusion of foreign companies, or the imposition of conditions upon their doing business, unless they desire the benefits to be derived from the law applicable to domestic corporations of similar character. The language of the section is as follows:

"Corporations organized under the laws of any State of the Union, or of any foreign country, either wholly or in part for any of the purposes contemplated by this act, upon recording copies of their charter, or articles of incorporation, or *memoranda* of association, as provided in section nine of this act, and upon filing in the office of the secretary of state a resolution, as required in general section forty-three hundred and thirty-one of Howell's Annotated Statutes, and appointing an agent for service of process, may, for such purposes, carry on business in this State, and shall enjoy all the rights and privileges, and be subject to all the restrictions and liabilities, of corporations existing under this act."

In *Bank of Augusta* v. *Earle, supra,* the court implies that, unless a statute indicates that contracts which derive their validity from comity are repugnant to the policy of the State, or are considered injurious to its interests, the presumption is in favor of the application of the doctrine of comity. See, also, *Runyan* v. *Coster,* 14 Pet. 122; *Carroll* v. *City of East St. Louis,* 67 Ill. 568; *Christian Union* v. *Yount,* 101 U. S. 352; *People* v. *Howard,* 50 Mich. 239; *Stevens* v. *Pratt,* 101 Ill. 206; *Commercial Union Assur. Co.* v. *Scammon,* 102 Ill. 46; *Aetna Ins.*

*Co.* v. *Harvey*, 11 Wis. 397; *Columbus Ins. Co.* v. *Walsh*, 18 Mo. 229; *Clark* v. *Middleton*, 19 Mo. 53. Even where the law imposes a penalty, some of the courts hold that a prohibition is not necessarily implied. For an extended discussion of this question, see *Wright* v. *Lee, supra.* We are of the opinion that this statute was not intended to prohibit foreign corporations from doing business within the State until they should comply with its terms, as the expression of such intention is neither "clear nor positive." 8 Am. & Eng. Enc. Law, 335.

But, if it should be held that the act under consideration was prohibitive, and that the company could not make or enforce contracts, it would not follow that this defendant could not be guilty of embezzlement. In *fact*, he was the agent of the company, whether it was a lawful enterprise or engagement, or not. By virtue of his relation, he became possessed of property which was not his, and which belonged to the company if to anybody. He acted for, and permitted himself to be held out as the agent of, the company, and received money from various persons who were willing to pay. He was a *de facto* servant, and it is unnecessary that his relation should have grown out of a lawful contract of agency. It was enough if he acted, and was permitted to act, as such. 2 Bish. Cr. Law, (8th Ed.) §§ 339, 340. See, also, *Com.* v. *Smith*, 129 Mass. 111; *Com.* v. *Cooper*, 130 Mass. 288; *State* v. *Tumey*, 81 Ind. 563; *Ex parte Ricord*, 11 Nev. 292; *State* v. *Spaulding*, 24 Kan. 1; *State* v. *O'Brien*, 94 Tenn. 79; 1 Whart. Cr. Law, § 1025, citing *Reg.* v. *Orman*, 36 Eng. Law & Eq. 611; *Rex* v. *Beacall*, 1 Car. & P. 454; *Campbell* v. *State*, 35 Ohio St. 70; *Willson* v. *Owen*, 30 Mich. 475.

2. *The Allegation of Time:* The information charged the offense as occurring "between the 1st day of July, 1893, and the 31st day of December, in A. D. 1893." This was not the technical allegation of a day certain, and it is urged that it is fatal, though counsel admits that evi-

dence of any embezzlement within six months after the date named might lawfully be shown, under 2 How. Stat. § 9421, which provides:

"In any prosecution for the offense of embezzling the money, bank notes, checks, bills of exchange, or other securities for money of any person, by a clerk, agent, or servant of such person, it shall be sufficient to allege generally in the indictment an embezzlement of money to a certain amount, without specifying any particulars of such embezzlement, and on the trial evidence may be given of any such embezzlement committed within six months next after the time stated in the indictment; and it shall be sufficient to maintain the charge in the indictment, and shall not be deemed a variance, if it shall be proved that any money, bank note, check, draft, bill of exchange, or other security for money of such person, of whatever amount, was fraudulently embezzled by such clerk, agent, or servant within the said period of six months."

This is no more than might be done under a definite allegation of date, if laid under a *videlicet.* The case of *People* v. *Donald,* 48 Mich. 493, seems to hold that this statute precludes conviction of an offense committed before the date stated in the information, and doubtless it would be held that it forbids conviction for an act committed more than six months after the date alleged; thus, in effect, shortening the period of limitation as applied to the trial to the term of six months. It is apparent that the legislature did not intend to *require* a change in the method of alleging the time, and we think the information must stand upon the general rule.

The rule of the common law is that the day must be alleged with certainty; but it is mere form, for it is not usually necessary to prove the day alleged. See 1 Bish. Cr. Proc. § 386, and note. But, as shown by the author of that work, the courts have in many cases mitigated the rigor of the rule. Id. § 387. In Connecticut, an allegation fixing the time as "on or about" a given day has been held good. *Rawson* v. *State,* 19 Conn. 292; *State*

v. *Tuller*, 34 Conn. 280. The allegation "between two days" is said by Bishop to be bad upon principle, because, if as wide apart as the statute of limitations, it is equivalent to no date. 1 Bish. Cr. Proc. § 396. It was held good, however, in the case of *U. S.* v. *Smith*, 2 Mason, 143. In the course of an interesting discussion of the subject, Mr. Justice Story says:

"It would seem strange that the fact might not be laid as it would be proved; that if the exact time were unknown, or could not be proved, it might not be so stated, or stated between such a day and such a day; that the day must be stated with certainty in the indictment, and yet a verdict finding it on another day would be good, or finding it on no day certain, as between two days, would be good. And this, though the time be admitted to be formal, and more certainty would not conduce to the relief of the defendant, or aid his defense, or narrow down the proof."

See, also, *Rex* v. *Roberts*, 4 Mod. 100.

Our statutes encourage liberality in relation to formal defects. 2 How. Stat. §§ 9534, 9535. The former section provides that no indictment shall be held insufficient for omitting to state the time at which an offense was committed in any case where time is not of the essence of the offense, or for stating the time imperfectly; and the latter requires objections for formal defects to be made before the jury shall be sworn. In the case of *People* v. *Gregory*, 30 Mich. 373, it is held that the allegation must be such as to show the offense to have been committed within the period of the statute of limitations, which the information does. The defect, if it be one, was amendable under the section of the statute last cited; and, under the same and the preceding section, we think it may be disregarded, as a formal defect, upon which objection was not seasonably raised.

3. *Evidence of Previous Acts of Embezzlement:* This was permitted to prove intent. Counsel cites the statute which makes the act of embezzlement larceny, and the case of *People* v. *Schweitzer*, 23 Mich. 301, where it was

held that evidence of offenses other than that charged
was inadmissible, and argues that this is a case of lar-
ceny, and therefore, under the case cited, the evidence
was not admissible, especially as it is claimed that the
money, when received, went into the cash drawer in the
company's office, and was subsequently removed by the
defendant, which is said to be larceny under some au-
thorities, irrespective of the statute, as contradistinguish-
able from embezzlement. We are not impressed with
the latter contention, and think, the case falls within the
statutory offense usually called embezzlement, under
which the defendant was prosecuted. Authorities are
numerous permitting the kind of proof under considera-
tion to show intent, both in our own and other States.
See the following cases, cited by counsel: 6 Am. & Eng.
Enc. Law, 501, and cases cited; *People* v. *Henssler*, 48
Mich. 49; *People* v. *Wakely*, 62 Mich. 297. Also, see note
to the case of *People* v. *Schweitzer, supra,* cited by counsel
for defendant, where numerous cases are cited.

4. *Questions for the Jury:* Error is assigned on the
failure of the court to give the defendant's fifth request.
It reads as follows:

"The ultimate decision of the question whether there
was a valid and subsisting contract of employment be-
tween the Standard Oil Company and the defendant rests
with the jury, and they are not absolutely bound by the
opinion of the court on that question."

The court instructed the jury as follows:

"If you are satisfied beyond a reasonable doubt that
the defendant was in the employ of the Standard Oil
Company as servant, clerk, or agent,—that is to say, as
bookkeeper or assistant cashier,—during the period cov-
ered by the information in this case, viz., during the
time intervening between the 1st day of July, 1893, and
the 31st day of December, 1893, and that, by reason of
such employment, certain moneys came into his hands
during that period, and that he feloniously appropriated
such moneys or any part thereof, which may have come
into his hands by virtue of such employment, to his own

use, with the intention of depriving the owners of the
same, he is guilty of the crime of embezzlement, and
you must so find.

"The evidence shows that the defendant entered the
employ of the Standard Oil Company in 1889, and re-
mained there until some time in August, 1894, when he
was arrested and charged with the crime for which he
is now being tried; that he was first engaged as book-
keeper, and that, some time in 1891, he was made assist-
ant cashier, in which capacity he received all the checks
and moneys which came into the hands of the company
at Detroit; and that it was the duty of the defendant to
deposit these funds in the bank to the company's credit.
The testimony shows, and the defendant admits, that
from 1891, up to and including the month of August,
1894, while he was in the employ of the Standard Oil
Company, he did take certain moneys belonging to that
company. It appears from the evidence that the de-
fendant was in the habit of taking checks which came
to the Detroit office of the company from the various
branch offices in different parts of the State of Michigan,
and that he placed these checks in the money drawer or
till, and took cash equal in amount to the checks which
he had placed therein, and that he converted this money
to his own use. This course of appropriating the com-
pany's money was continuous, and the method of doing
it was the same throughout the entire period, and the
defendant says that, during all this time, he had the same
intent with regard to taking and appropriating the
money. It is for you to say what that intent was."

It is not claimed that the evidence stated by the court
is disputed, and the point of this request appears to be
that the jury should not have been told the court's opin-
ion about it. He prefaced what he said about the evi-
dence by leaving the question to them, and followed it
by sending them to their room to determine the question
of guilt or innocence. It is settled by former adjudica-
tions that it is the duty of the jury to take the law from
the court, and that, where there is no conflict in the evi-
dence, and the defendant in open court admits facts legal-
ly constituting an offense, the court may so state,
and even go so far as to direct a verdict. In this case,

the defendant had practically sworn to his own guilt, yet, in the abundance of his caution, the court left the question of intent to the jury. *People* v. *Richmond,* 59 Mich. 570; *People* v. *Ackerman,* 80 Mich. 588. This also covers the fifth point, which need not be discussed.

We find no error, and think that the conviction should be affirmed, and the recorder's court directed to proceed to judgment. Ordered accordingly.

GRANT and MONTGOMERY, JJ., concurred with HOOKER, J. LONG, J., did not sit.

McGRATH, C. J. I cannot concur in the opinion of Mr. Justice HOOKER. The embezzlement statutes are aimed at named classes of persons: Officers of loaning and investing societies (section 3276); officers having custody of securities deposited with the State (section 4236); officers of banks (section 9148); warehousemen (section 9159); insurance agents (sections 9190, 9191), etc. The provision under which respondent is charged is section 9151, and is aimed at "any officer, agent, clerk, or servant of any incorporated company" who shall embezzle, etc. The liability depends upon the existence of the relation. It is only when the statute is silent that the doctrine of comity applies, and the permission to do business is presumed. The statute referred to (3 How. Stat. § 4161$d$6) prescribes the terms and conditions upon which foreign corporations may do business in this State. It contains no penalty,—no other means of its enforcement. Unless the conditions are complied with, all contracts made by the corporation in this State are absolutely void. This is the only construction that can give effect to the statute. Such statutes are held to be prohibitory, and a foreign corporation can have no legal existence in this State, except upon compliance with the conditions imposed by the statute. An averment of the fiduciary relation is an essential ingredient of the information, and the relationship must be established. This is not the

case of an agent employed in a State where such employment was lawful, to do some act within this State in itself lawful. Here the contract of employment was illegal and void, and the relation did not exist. To say that respondent was in fact the agent is to say that in fact there was a contract of agency. *Seamans* v. *Temple Co.*, 105 Mich. 400; *People's Mut. Ben. Society* v. *Lester*, 105 Mich. 716