## STATE v. TIMOTHY MURPHY.[1]

February 10, 1911.

Nos. 16,766—(36).

**Grand larceny — evidence — charge to jury.**
In a prosecution for grand larceny, it is *held* that the evidence justified a verdict of guilty, and that the record presents no reversible errors in the admission or exclusion of evidence, or in the instructions of the court to the jury.

**Foreign corporation — compliance with Minnesota statute.**
In the absence of allegations or evidence to the contrary, it will be presumed that a foreign corporation, doing business in this state, has complied with our statutes.

**Larceny of funds of de facto corporation.**
An officer or agent of a corporation may be convicted of the larceny of its funds, though there may be some defect in its organization, and it have only a de facto existence.

Defendant was convicted in the district court for Ramsey county of the crime of grand larceny in the first degree. From an order, Hallam, J., denying his motion for a new trial, he appealed. Affirmed.

[1] Reported in 129 N. W. 850.

*James Cormican,* for appellant.

*George T. Simpson,* Attorney General, and *Richard D. O'Brien,* County Attorney, for the State.

BROWN, J.

Defendant was convicted of the crime of grand larceny in the first degree, and appealed from an order denying his motion for a new trial.

The facts, briefly stated, are as follows:.

The "Volunteers of America" is a corporation organized and created under the laws of the state of New York. It is a religious association, military in its methods, and having for its object the uplifting of those who have been unmindful of, or who for lack of opportunity have neglected, their obligations to God and society. Though organized in and having its headquarters and principal office in the state of New York, it extends its work by means of branch organizations or agencies, termed "posts," into nearly every state in the Union, and there through the medium of chosen officers and agents carries on its commendable work. Prior to the time involved in this prosecution the society established a branch, or post, at St. Paul, in this state, and defendant, who had voluntarily applied for and been admitted a member of the society, became the captain, or officer in charge. His duties as such are clearly defined by the constitution and regulations of the association, and as a matter of law he became, upon his admission as a member, an agent of the corporation.

During the winter of 1910 defendant conceived the plan of building a home for the working girls of St. Paul, and in furtherance thereof inaugurated a "tag day" for the collection of the necessary funds from charitably disposed persons, designating March 17, 1910, upon which contributions would be solicited. His plans were laid before and approved by the superior officers of the society, and it was subsequently conducted in its name and by its authority. It was, however, under the control of defendant, who called to his assistance other members of the local post. Donations to the fund

were liberally made by the citizens and aggregated the total sum of $1,900.

Defendant took possession of the money, though there seems to have been a treasurer of the local post, and deposited the same in a St. Paul bank in his own name. It is claimed by defendant the person appointed as treasurer was such in name only, and this is probably the fact; for defendant at all times seems to have had charge of the funds of the local post. Therefore no adverse inference is to be drawn against him from the fact that he deposited the money in the bank in his own name. The name used was "Captain Tim Murphy." On March 21, 1910, the money so collected having all been theretofore deposited, defendant appeared at the bank and presented a check payable to himself for the sum of $1,250, and requested payment thereof in large bills. The request for "large bills" evidently excited the curiosity of the paying teller, and he inquired the reasons for the request, and was informed by defendant that they were wanted in a real estate deal. He was advised to use a check, but replied that he preferred the money. It was given him in the form of two $500 packages, and the balance of $250 in bills of a large denomination. He had appointed a meeting for the evening of that day to discuss with other members of the post plans for the proposed working girls' home. The meeting was held, but no mention was made of the fact that defendant then had on his person $1,250 of the tag day collections, and it does not appear that negotiations for the purchase of land upon which to build the home were to be had at that time.

After the meeting defendant disappeared, and with him the money. He returned to his home on the twenty-ninth of March, and exhibited by his appearance strong evidence of a protracted debauch. The evidence is clear that he proceeded at once to Winnipeg, and there remained until the day of his return. He then had, of the money taken away, $110 in Canadian bills. The balance of the money drawn from the bank has never been returned to the society. Defendant related to his associates his experience during his absence, and claimed that after the meeting on the evening of the twenty-first of March he was seized by two men, who approached

him in an automobile while waiting for a street car, and chloroformed, kidnapped, and detained him until the day of his return. He professed entire ignorance of his whereabouts in the meantime, and insisted that the money had been take.. 'rom him by those men. He was not sworn as a witness on the trial, and his story, given above in a word, appears from the testimony of one of the officers of the society to whom defendant related the facts.

1. The questions presented by defendant in support of the contention that the trial court erred in denying his motion for a new trial require no extended discussion. The claim that the evidence is insufficient to sustain a conviction is not sustained. We have examined the record with care, and find the verdict supported by ample evidence. It fully sustains the theory of the state that defendant deliberately appropriated to his own use the money in question, and, without reviewing it, we concur with the trial court that no other verdict could well have been rendered. We have also examined carefully the assignments of error challenging the rulings of the court in the admission of evidence, and in its charge to the jury, and discover no reversible error.

2. It is contended that the indictment fails to state facts constituting a public offense, and that the court for that reason erred in overruling defendant's objection, made at the opening of the trial, to the admission of any evidence thereunder. The point is that it does not appear upon the face of the indictment that the "Volunteers of America," alleged to be the owner of the money charged to have been stolen by defendant, being a foreign corporation, had complied with the statutes of this state prescribing conditions upon which such corporations may do business in this state. Section 2888, R. L. 1905. The contention is without force. Compliance with our foreign corporation statutes will, in the absence of allegation or evidence to the contrary, be presumed. Lehigh Valley Coal Co. v. Gilmore, 93 Minn. 432, 101 N. W. 796, 106 Am. St. 443. It appears from the evidence offered at the trial that the society is a religious corporation, and it is doubtful, though some features thereof may tend in that direction, whether it is a corporation for pecuniary profit within the meaning of the statutes. Section 2888,

R. L. 1905. But, if they are applicable, it is clear that a failure to comply therewith would not have the effect of protecting the agents thereof who unlawfully appropriate its money or property. People v. Hawkins, 106 Mich. 479, 64 N. W. 736; Wilder v. Com. (Ky.) 89 S. W. 732. The money alleged to have been stolen was held by the corporation in trust for the purposes for which it was contributed and the corporation was, within the meaning of the law, the owner of the same. Defendant was its agent, and instrumental in obtaining the money for the purposes stated; and the wrongful conversion thereof by him constituted larceny, whether the corporation, his principal, had authority as a matter of law to engage in the enterprise in this state or not.

Nor is the point that the society was not legally incorporated under the laws of New York available to defendant. It was at least a de facto corporation, and it seems clear that the law will not, by reason of some defect in its organization, permit its funds to be made the subject of plunder by its trusted officers and agents. Braithwaite v. State, 28 Neb. 832, 45 N. W. 247, 25 Cyc. 96.

3. It is also contended that the prosecution must fail for the reason that no demand was made upon defendant for the return of the money. Under the circumstances of this case, as shown conclusively by the evidence, no demand was necessary. It appears clearly from the evidence that defendant feloniously appropriated the money to his own use, and that a demand would have been unavailing. State v. New, 22 Minn. 76, 78; State v. Comings, 54 Minn. 359, 56 N. W. 50; Com. v. Hussey, 111 Mass. 432. The money was in defendant's possession as agent of the society. He deposited it in the bank, to be subsequently used for the particular purpose. There is no claim that he withdrew it from the bank for that purpose, and the inference is conclusive that he drew it for his own private purposes, and at that moment committed the crime charged against him.

This covers all questions requiring special mention, and results in an affirmance of the order appealed from.

Order affirmed.

JAGGARD, J., took no part.