## THE PEOPLE v. HUDSON J. WAKELY.

62 297
90 359.

62 297
105 78

62 297
106 487

62 297
107 362

62 297
115 542

62 297
126 643

62 297
137 6 94

*Criminal law—False pretenses—Information for held sufficient under How. Stat. secs. 9226, 9539—People must prove making of representations— And their falsity—Substantially as alleged—On facts summarized in head-note 2, held, that case should have been taken from the jury—Object of How. Stat. sec. 9161, is to punish cheats—To warrant conviction thereunder, some person must be shown to have been defrauded—And that respondent intended such a result—If several false representations are alleged in information—Proof of any one amounting in law to a false pretense, sufficient to sustain such pleading—Three things must concur to warrant a conviction: intent to defraud, the false pretense made with such intent, and the fraud thereby accomplished—Change in respondent's financial circumstances after making alleged false representations—Cannot by relation charge him with an intent to defraud at time of making same— Where particular intent is of the essence of an offense—Evidence of previous acts of same kind by respondent, admissible to show such intent—Competent to aver the making of false representations to an agent of a vendor—Who had authority to sell the property—Proof of such facts sufficient—Although principal only acted on such representations through such agent.*

1. The information in this case (see opinion, pp. 300–302) is sufficient under How. Stat. §§ 9226, 9539; [1] and it was the duty of the people prove, not only the *making* of the representations, but their *falsity*, to substantially as alleged in the information.

2. Where a respondent was charged with *falsely* representing that he was the owner of a farm worth six thousand dollars, free from incumbrance, and that his brother was like owner of a good farm, and was worth twenty-five thousand dollars, whereby the complainant was induced to sell to respondent personal property of the value of one

---

[1] How. Stat. § 9226.—"In any case where an intent to defraud is required to constitute the offense of forgery, or any other offense that may be prosecuted, it shall be sufficient to allege in the indictment an intent to defraud, without naming therein the particular person or body corporate intended to be defrauded; and on the trial of such indictment, it shall be deemed sufficient, and shall not be deemed a variance, if there appear to be an intent to defraud the United States, or any state, county, city, or township, or any body corporate, or any public officer in his official capacity, or any copartnership or member thereof, or any particular person."

§ 9539.—"When the offense charged has been created by any statute, or the punishment of such offense has been declared by any statute, the indictment shall, after verdict, be held sufficient to warrant the punishment prescribed by the statute, if it describe the offense in the words of the statute."

hundred and fifty dollars, taking in payment therefor the promissory note of respondent and his said brother; and on the trial it appeared that respondent's representations as to the ownership of the six-thousand-dollar farm were true, and the testimony failed to show the falsity of the remaining representations, or that respondent was not worth six thousand dollars at time of such purchase, and no steps having been taken to collect the said note:—

*Held*, that the people failed to make a case, and the court should have directed a verdict of not guilty.

3. The object of the statute (How. Stat. § 9161) is to punish cheats, and in order to a conviction it must be made to appear, not only that some person has been *defrauded*, but that the person making the representations *intended* to defraud such person thereby.

4. Where *several* alleged *false* representations are set forth in an information, proof of any *one* of them amounting in law to a *false pretense* is sufficient to sustain the information. In all such cases, the intent to defraud, the false pretense made with that intent, and the fraud thereby accomplished, must be shown to warrant a conviction.

5. Where a vendee represented that he was worth a specified sum as an inducement to the purchase, no *after* change in his financial circumstances will by relation fasten upon him an intent to defraud at *time* of such purchase.

6. When it is necessary to show a *particular* intent in order to establish the offense charged, proof of *previous* acts of the *same* kind is admissible for the purpose of showing guilty knowledge or intent. *People v. Henssler*, 48 Mich. 52.

7. It is competent in an information for false pretenses to allege that they were made to an agent, and if he had authority to sell the article obtained by such false pretenses, it will be sufficient, although the principal did not act thereon otherwise than through the agent.

Exceptions before judgment from Ionia. (Smith, J.) Argued June 23, 1886. Decided July 1, 1886.

False pretenses. Respondent was convicted. Reversed, and new trial ordered. The facts are stated in the opinion and summarized in head-note 2.

*George H. Cagwin* and *Mitchel & McGarry*, for respondent:

The information is fatally defective. It fails to connect the alleged pretenses with the fraud charged to have been accomplished thereby, or to show how they could have affected the mind of the vendor, and thereby induced him to part

with his property. This is absolutely imperative : *Enders v. People*, 20 Mich. 243 ; *State v. Philbrick*, 31 Me. 401 ; *Com. v. Strain*, 10 Metc. 521 ; 2 Bishop, Crim. Proced. § 175.

The information does not allege that the respondent knew the representations to be false, and this is of the essence of a criminal charge of this character : *Enders v. People*, 20 Mich. 243, and cases cited ; 2 Bish. Crim. Proced. § 172, and cases cited.

The representations as to the value of the land owned by respondent and his brother were mere matters of opinion : *Bristol v. Braidwood*, 28 Mich. 191–4 ; *People v. Jacobs*, 35 Id. 36 ; *Rex v. Reed*, 7 C. & P. 848 ; *Queen v. Wickham*, 10 A. & E. 33, 46.

The information does not allege that the false representations were made to Margaret J. Schild, or to John Schild, and by him communicated to her : *Com. v. Harley*, 7 Metc. 462–7 ; *Com. v. Strain*, 10 Id. 521–3 ; *Com. v. Call*, 21 Pick. 515, 523.

The rule is universal that the representations must have been the operative cause of the transfer (*Com. v. Davidson*, 1 Cush. 33 ; *Com. v. Drew*, 19 Pick. 179 ; 2 Wharton's Crim. Law, §§ 2120–2 ; *Enders v. People*, 20 Mich. 243), and must have been false when made (*Rex v. Spencer*, 3 Car. & P. 420 ; 2 Bish. Crim. Law, § 347 ; 2 Wharton's Crim. Law, § 2110).

It is not enough that the statements must be known to be false ; the fraud must be accomplished : *Com. v. Drew*, 19 Pick. 179, 182 ; *People v. Crissie*, 4 Denio, 527 ; *Rex v. Spencer*, 3 Car. & P. 420 ; 2 Bish. Crim. Law, § 347.

*Moses Taggart,* Attorney General, for the People :

False representations made to the agent of a vendor are sufficient as a basis for a prosecution under the statute : Tiffany's Cr. Law, 659 ; *Com. v. Harley*, 7 Metc. 462.

The information is more specific than required by How. Stat. § 9226, and it is sufficient to allege in the language of the statute : How. Stat. § 9539 ; *People v. Van Alstine*, 57 Mich. 69.

It was unnecessary to allege that Margaret J. Schild relied upon the representations made to her agent, who it is averred believed them, and was thereby deceived and induced to deliver the property : *People v. Jacobs*, 35 Mich. 36 ; *State v. Penley*, 27 Conn. 587.

Unless the information fails to charge a criminal offense,

How. Stat. § 9535, requiring all objections to an indictment for formal defects apparent on its face to be taken by demurrer, or motion to quash before the jury is sworn, applies: *People v. Wattles*, 13 Mich. 446.

The information set forth a true statement of the facts, as shown by the evidence offered; giving the name of person defrauded, and acts and representations of respondent by which the fraud was accomplished : *Com. v. Call*, 21 Pick. 515 ; *Com. v. Harley*, 7 Metc. 462.

The question whether representations mislead is one of fact rather than law : *People v. Long*, 44 Mich. 299 ; *Thomas v. People*, 34 N. Y. 351.

As to right to show other similar representations of respondent, see *People v. Henssler*, 48 Mich. 49 ; *Hall v. Naylor*, 18 N. Y. 588; *Miller v. Barber*, 66 Id. 588; *Mayer v. People*, 80 Id. 364 ; *Cary v. Hotailing*, 1 Hill, 311.

Respondent represented his farm to be free from all incumbrances, which claim was shown to be false; and such representations should have been submitted to the jury : *U. S. Life Ins. Co. v. Wright*, 33 Ohio St. 533 ; *Copperman v. People*, 56 N. Y. 591 ; *Coleman v. People*, 58 Id. 555 ; *Com. v. Price*, 10 Gray, 472 ; *Com. v. Edgerly*, 10 Allen, 184.

CHAMPLIN, J. The defendant was informed against and convicted of obtaining personal property by false pretenses.

Objections are taken to the sufficiency of the information.

We are of opinion that the information is sufficient, under our statutes relative to pleadings in such cases. How. Stat. §§ 9226, 9539.

It was incumbent upon the prosecution to prove, not only the representations and pretenses made, but their falsity, substantially as alleged in the information. These were as follows :

" That Hudson J. Wakely, * * on the fourth day of August, 1884, at the city of Ionia, in the county of Ionia, with intent to cheat and defraud one Margaret J. Schild, and fraudulently obtain one single top-buggy with improved Brewster spring, of the value of one hundred and fifty dollars, of the goods and chattels and property of her, the said Margaret J. Schild, did designedly falsely represent and pretend to one John Schild, who was the agent of the said Margaret Schild, and had the authority from her to sell and

dispose of said buggy, that he, the said Hudson J. Wakely, owned in fee simple, clear and free from all liens or incumbrance, one hundred and twenty acres of good farming land in Montcalm county, Michigan, worth six thousand dollars; and said Hudson J. Wakely well knew at the time he made said representations that said John Schild was the agent for said Margaret J. Schild, as herein stated.

" And also that said Hudson J. Wakely, at the same time and place, with intent to cheat and defraud said Margaret J. Schild, and fraudulently obtain said top-buggy from her, did further designedly falsely represent and pretend to the said John Schild, as agent for said Margaret J. Schild, and with intent to obtain said buggy as aforesaid, that his brother, that is to say, the brother of said Hudson J. Wakely, to wit, one John Q. Wakely, owned one hundred and sixty acres of good farming land near Carson City, Michigan, and that his brother was worth at least twenty-five thousand dollars, free and clear of all liens and incumbrances.

"And the said John Schild, believing the said false pretenses and representations so made as aforesaid, was then and there deceived thereby, and was induced, by means of the false pretenses and representations so made as aforesaid, to deliver, and did then and there, heretofore, to wit, on the fourth day of August, 1884, deliver, to said Hudson J. Wakely, one single top-buggy with improved Brewster spring, of the value of one hundred and fifty dollars, and the property of said Margaret J. Schild, and take the promissory note for one hundred and fifty dollars of said Hudson J. Wakely and John Q. Wakely in payment for said buggy; but in express reliance of the said false and fraudulent representations made by said Hudson J. Wakely as to the pecuniary responsibility of himself and said John Q. Wakely, said note being for the sum of one hundred and fifty dollars, and to become due in six months from August 4, 1884; whereas, in truth, the said Hudson J. Wakely did not own said land in Montcalm county, Michigan, and was not responsible for said note, and was not worth the sum of six thousand dollars over and above his exemption, but, on the contrary, was not worth any property liable to execution.

" And, further, that the said John Q. Wakely was not at said time the owner of one hundred and sixty acres of land near Carson City, Michigan, and was not worth at least twenty-five thousand dollars as herein stated, and was not good and responsible for the amount of said note; and said note is entirely worthless and of no value, and would not

have been accepted nor taken except for the fraudulent representations made by the said Hudson J. Wakely, as herein stated; and neither said Hudson J. Wakely nor John Q. Wakely are good for, nor responsible for, the amount of said note nor said buggy obtained, as herein stated, upon said false and fraudulent representations."

As the case developed upon the trial, the people failed to prove that the representations made by the respondent that he owned a farm near Greenville that was worth six thousand dollars, free and clear from all incumbrance, were false; and the circuit judge charged the jury that those representations, if made, must be taken as true; and he left it to the jury to determine whether the further representations with reference to John Q. Wakely were made, and whether or not they were false.

The testimony introduced to show what John Q. Wakely was worth fell far short of establishing the falsity of the representations. Much of it was hearsay, and much other was incompetent. The court should have taken the case from the jury. The people failed to make a case.

The object of the statute is to punish cheats, and it must be made to appear, not only that some person has been defrauded, but that the person making the representations intended to defraud the person by the representations made.

The complaint is that the accused falsely represented his financial condition, and that of his brother, to induce Margaret J. Schild to take a note signed by the accused and his brother for $150, in payment for a buggy.

As to his own condition, he represented that he was the owner of a farm near Greenville worth $6,000, free and clear, and it turns out that this representation was true, so far as this case was concerned, as stated by the learned judge. This being conceded, how does it appear that he intended to defraud Margaret J. Schild out of her buggy? Can it be said that a person worth $6,000, in a farm free and clear of all incumbrance, either intends to or does perpetrate a fraud in giving his note to the amount of $150 for property purchased? Whether it be true or false that his brother whose

name was upon the note was worth $25,000 made no differ-
ence, unless the vendor of the buggy was actually defrauded
in the transaction. No steps have been taken to enforce
collection of the note, and no evidence was introduced to
show that at the time he made the representations he was not
worth $6,000.

It is true that there need be but one false pretense, and
though several are set out in the information, yet if any of
them are proved which amounts in law to a false pretense,
the information is sustained. But it does not amount in law
to a false pretense unless made with a fraudulent intent, and
the person parting with the property is actually defrauded.

In all cases of this kind *three* things, at least, must concur:
the intent to defraud, the false pretense made with the intent,
and the fraud accomplished. If the respondent was worth
$6,000 at the time he purchased the buggy, no change in his
circumstances since relate back so as to fasten upon him an
intent at that time to defraud.

When it is necessary to show a particular intent in order
to establish the offense charged, proof of previous acts of
the same kind is admissible for the purpose of proving guilty
knowledge or intent. *People v. Henssler*, 48 Mich. 52. [1]
The errors assigned based upon the receipt of such testimony
are overruled.

It was competent to allege in the information that the false
representations were made to an agent, and if he has author-
ity to sell the article obtained by such false pretense, it will
be sufficient, although the principal did not act upon the rep-
resentations made otherwise than through the agent.

The judgment must be reversed, and a new trial ordered.

The other Justices concurred.

---

[1] "The *general* rule undoubtedly is that in criminal cases evidence of
another and *distinct* offense, though of the same kind with that charged,
cannot be given in evidence, and yet in many cases exceptions to this rule
are recognized and established.

"Where it is necessary to show a *particular intent* in order to establish
the offense charged, proof of previous acts of the *same kind* is admis-
sible for the purpose of proving guilty knowledge or intent. In cases of
uttering forged instruments;" receiving stolen property; passing worth-
less bank bills,—these, and many other cases might be referred to." See
*People v. Schweitzer*, 23 Mich. (2d ed.) 301, and note.