PEOPLE v. RANNEY.

1. CRIMINAL LAW—CORPUS DELICTI—PROOF—CONFESSIONS — SUF-
FICIENCY.

It is the general rule that the corpus delicti may not be proved
by the naked extrajudicial confession of accused.

2. SAME—CORPUS DELICTI—WHAT CONSTITUTES.

Logically the corpus delicti includes only the fact of the
specific loss or injury sustained, though some of the cases
hold that it also includes the fact of someone's criminality
as the source of the loss.[1]

3. SAME—CONFESSIONS—CORROBORATION—SUFFICIENCY.

The corroboration of accused's extrajudicial confessions neces-
sary to establish the corpus delicti refers to facts which con-
cern the corpus delicti, facts tending merely to produce con-
fidence in the truth of the confession not being sufficient.

4. SAME—FALSE PRETENSES—CONFESSIONS—CORROBORATION—SUF-
FICIENCY.

In a prosecution for false pretenses in procuring funds on a
worthless check, evidence examined, and *held*, that though
there was no evidence that the check was worthless other
than the fact that it had been forwarded in the usual course
of business to a distant State and returned unpaid, there was
sufficient corroboration of respondent's confessions to sup-
port a conviction, assuming that the corpus delicti includes
not only the fact of the specific injury, but the element of
someone's criminality as the source thereof.

5. SAME—TRIAL—INDORSING WITNESSES.

Counsel for respondent, before learning the nature of the testi-
mony to be elicited from a new witness, stated that he would
need time to send to New York to find out a fact, but, upon
learning the fact to be proved by the witness, said that
his position was that the fact was immaterial, and no motion

---

[1]As to proof of corpus delicti, see note to *Bines* v. *State* (Ga.),
68 L. R. A. 33.

for time was made. *Held*, that it was not error to indorse the name of the witness on the information and permit him to testify.

6. SAME—ARGUMENT OF COUNSEL—PREJUDICE.

A statement made by the prosecuting attorney, in argument, to the effect that respondent was committing adultery every day, the purpose being to discredit him because of his immorality, was not prejudicial, though there was no proof that either respondent or the woman with whom he was traveling was married, where it appeared that they were registered at hotels as man and wife and were not married.

Error to the superior court of Grand Rapids; Stuart, J. Submitted May 7, 1908. (Docket No. 127.) Decided June 27, 1908.

Melvin C. Ranney was convicted of obtaining money by false pretenses, and sentenced to imprisonment for not less than 1 year, nor more than 10 years, in the Michigan reformatory at Ionia. Affirmed.

*William B. Brown*, for appellant.

*John W. Powers*, Assistant Prosecuting Attorney, for the people.

OSTRANDER, J. Respondent is charged, in the information, with obtaining money by false pretenses. The pretenses alleged are that he was owner of a certain check and order for the payment of money, that the check was of the value of $50, and that there was on deposit at the place of payment designated in the check $50 with which to pay it when presented, and that said sum would be paid to the complainant, or bearer, upon presentation of the check, and that there was at the place of payment a book, No. 583, and would be when the check was presented, and that said book showed a balance on deposit of $478. A copy of the check is set out, as follows:

" New York, April 4, 1907. $50.00
" Pay on Book No. 583.
" Union Dime Savings Institution.
" Broadway, 32nd St. & 6th Ave.
"Fifty dollars, to myself or bearer, and this shall be your receipt.
Signature, " L. J. CAMERON.
" Individually, or as trustee, as the book reads,
" Present Address, Grand Rapids, Mich.
" Previous Balance $478.00.
" Endorsed on Back, M. C. Ranney, J. E. Rice."

The record discloses that respondent procured the check to be cashed at a hotel where he was stopping, paid his bill out of the proceeds and retained the balance. The hotel keeper indorsed the check and negotiated it with a merchant, who deposited it in a local bank for collection. It was sent by the local bank to New York city and returned unpaid. There is no other testimony tending to prove that the check was ever presented at the designated place of payment. Beyond the fact that the check was so forwarded and so returned unpaid, there is nothing tending to prove the check was worthless except an alleged confession of respondent, testified to by officers who had him in charge.

It is contended, and it is the principal question presented, that there was no sufficient proof of the commission of the offense. The proposition advanced is that the commission of a felony cannot be proved by the extrajudicial confession of the accused. Applied to this case, this means that guilt of the respondent may not be determined by his confession that the check was, and was by him known to be, worthless; that the people were bound to show presentation of the check to the Union Dime Savings Institution, in New York, if such an institution existed; that it was not drawn against funds, that payment was refused.

It is the general rule that the corpus delicti may not be proved by the naked extrajudicial confession of the accused. 12 Cyc. p. 483; 6 Am. & Eng. Enc. Law (2d

Ed.), p. 582; Wharton on Criminal Evidence (9th Ed.), §§ 632, 633; *People* v. *Lane*, 49 Mich. 340. The question presented leads to the inquiry, What is the corpus delicti in a case like this one? In 3 Wigmore on Evidence, § 2072, it is said that an analysis of every crime, with reference to this element of it, reveals three component parts, *first*, the occurrence of the specific kind of injury or loss (as, in homicide, a person deceased; in arson, a house burnt; in larceny, property missing); *secondly*, somebody's criminality as the source of the loss,—these two together involving the commission of a crime by somebody; and, *thirdly*, the accused's identity as the doer of this crime; that the term corpus delicti seems in its orthodox and its logical sense to signify merely the first of these elements, namely, the fact of the specific loss or injury sustained, although some judges (Chief Justice Shaw in *Com.* v. *Webster*, 5 Cush. [Mass.] 295, and Chief Justice Church in *People* v. *Bennett*, 49 N. Y. 137, among others) have held that it also includes the second element. I do not find any general rule laid down by the decisions of this court. Language is employed in *People* v. *Hall*, 48 Mich. 482, 485, which indicates that in cases of homicide the corpus delicti involves the death and, also, its character—whether probably caused by someone other than the deceased. See, also, *People* v. *Aikin*, 66 Mich. 460, 472–474; *People* v. *Parmelee*, 112 Mich. 291, 294, 295. The rule that the corpus delicti must be proved by some evidence other than the confession of the accused,—that the confession must be corroborated,—is recognized in *People* v. *Lambert*, 5 Mich. 349, 366; *People* v. *Isham*, 109 Mich. 72; *People* v. *Hawksley*, 82 Mich. 71, 73, 74; *People* v. *Kemp*, 76 Mich. 410, 416; *People* v. *Hess*, 85 Mich. 128, 132, but without determining, in either case, except perhaps inferentially, what constituted the corpus delicti. In some cases, the idea has been expressed that the nature of the offense charged was such that no proof of the corpus delicti could be made as of a separate element of the offense. Such are the cases of *People* v.

*Swetland*, 77 Mich. 53, 63; *People* v. *McGarry*, 136
Mich. 316, 324. In *People* v. *Swetland*, it was said:

" There are some cases where the corpus delicti—gener-
ally in homicide—is clearly separated and distinct from
the question as to who committed the offense, if any is
found to have been committed. In such cases the evi-
dence to establish the corpus deliciti must first be given,
before acts or admissions of the accused can be put in evi-
dence. But the present case is one where the body of the
offense—the uttering of a forged instrument, knowing it
to be false—is so intimately connected with the question
whether or not the respondent is guilty of the crime, that
there can be no such separation. The corpus delicti in this
case depends entirely for its existence upon the acts and
intent of the respondent, so that her acts and admissions,
if admissible at all, were admissible at any stage of the
proceedings upon the trial."

For the purposes of the present case, it may be conceded
that it was necessary that the confession of respondent
should be corroborated as to the corpus delicti. Whether
we consider only the first or the first and second elements,
as stated, as constituting the corpus delicti, there is, in
this case, evidence corroborating the facts stated by re-
spondent in his confession. I use the term corroborate as
meaning not merely tending to produce confidence in the
truth of the confession, but as referring to facts which con-
cern the corpus delicti. This is the legally correct mean-
ing. 3 Wigmore on Evidence, § 2071. There is evidence
undisputed—indeed corroborated by respondent—that he
applied to Mr. Rice, the keeper of the hotel, to cash the
check, that the check was cashed and respondent received
the money. The check was forwarded in the usual course
of business to New York and was returned unpaid. It
has not been paid and Mr. Rice has never received his
money. Before the check was cashed, and as an induce-
ment, respondent, who was at the hotel with a woman
not his wife, and owed the proprietor for entertainment,
stated that they were going to Muskegon for three or four
days and would then return to the hotel, and that mean-

time Mr. Rice could find out whether or not the check was good; that he would leave a big trunk and a typewriter in it. He left the trunk but no typewriter. He did not return to the hotel but was arrested in May, at Wheaton, Illinois, where he was known as H. H. Straub. He told Mr. Rice that he had been with a certain firm or institution in New York for ten years, had worked from a window washer up, and that the house always sent such checks to their traveling men. He said that Cameron, the drawer of the check, was a member of the firm. A portion of his confession, according to the testimony, was that a man named Cameron drew the check, respondent was to get it cashed, and they were to "split" the money, and did divide it; that Cameron was more to blame than he (respondent) was; that Cameron "told me that he knew a way to get a little easy money;" that he used an assumed name at Wheaton because afraid he might be arrested, and intended to straighten up this matter when he got to work. There was more to the confession than is here stated, some of it favorable to respondent. But it cannot be said that such portions of it as relate to the corpus delicti are not corroborated by other evidence.

During the trial the prosecuting attorney, over objection, obtained leave of the court to indorse upon the information the name of a witness who was thereupon called, sworn, and examined. The testimony of this witness, or that of some other person connected with the bank which forwarded the check for collection, was necessary if the fact was to be proved. On a motion made previous to the trial to discharge the respondent, the subject was adverted to in such a manner that it is apparent the prosecuting attorney must have known he would probably need the witness at the trial. Counsel for respondent, before learning the nature of the testimony to be elicited from the new witness, stated that he would need time to send to New York to find out in regard to the check. Upon learning that it was proposed to prove only that the check went through the bank, was sent on for collection and re-

turned unpaid, he said his position was that the testimony would be incompetent, irrelevant, and immaterial. It is stated in the brief for respondent that a continuance of the case was asked for and was denied. The record which is referred to does not support this statement. The right to further time was asserted, as has been stated, but no motion for time was made, and the necessary inference from the record is that the trial judge did not suppose that a continuance was desired.

Error is assigned upon a statement made, in argument, by the prosecuting attorney, to the effect that respondent was committing adultery every day. The remark was excepted to. The point made seems to be that there was no proof that either the respondent or the woman he was traveling with was married. But they were registered as man and wife and respondent testified they were not married. The gist of the argument was, not that the relations were such as the word used defines, but that they were immoral, affecting the credibility of respondent. We should not reverse the conviction upon this ground.

A number of errors are assigned upon the charge as given and upon refusal to charge as requested. They have been examined and the charge as given has been carefully read without our being able to say that any reversible error was committed.

Judgment is affirmed.

HOOKER, MOORE, CARPENTER, and McALVAY, JJ., concurred.