COLL *v.* LEAKE, DISTRICT JUDGE.

APPLICATION for a writ of *certiorari.*

No. 75.—Decided June 21, 1911.

ATTORNEYS—CONTEMPT—CRITICISM OF TESTIMONY OF WITNESS.—The statements made in open court by the attorney for one of the parties to the effect that he does not believe the statements of certain witnesses, even under oath, do not constitute contempt of the court wherein such statements are criticised in said form, because, in accordance with jurisprudence, the attorney may attack the credibility of the witnesses, and can even state that perjury has been committed and that a witness has been bribed, when such conclusions may be a logical consequence of the testimony given in court.

CONTEMPT—DISOBEDIENCE OF VOID ORDERS—JURISDICTION.—Disobedience of an order of a court issued without jurisdiction therefor does not constitute contempt.

SUSPENSION OF ATTORNEY—JURISDICTION OF DISTRICT COURTS TO DECREE SAME—PENALTY FOR CONTEMPT.—In accordance with the laws in force in Porto Rico, district courts have no power to punish an attorney for contempt by

suspending him temporarily from the practice of his profession—that is, by striking his name from among the attorneys of record for a party—which elimination constitutes in reality a temporary suspension.

CONTEMPT—INHERENT POWERS OF COURTS.—The inherent powers of courts to punish contempt should be exercised within the limits prescribed by the statutes.

ID.—GENERAL POWERS OF COURT TO PUNISH THEREFOR.—The powers conferred upon courts by paragraph 5 of section 7 of the Code of Civil Procedure, to govern the conduct of the officers thereof and of other persons appearing therein, are of a general character and should be exercised in accordance with the laws in force on the subject of contempt.

INTERPRETATION OF LAW—PROVISIONS OF GENERAL AND SPECIFIC CHARACTER.— It is a general principle of interpretation that two legislative provisions, one of a general and the other of a specific character, may subsist at the same time, although they may appear to be contradictory and although they may be parts of the same or of different laws notwithstanding the date of their approval, it being understood that provisions of a specific character qualify and constitute exceptions to the provisions of a general character.

The facts are stated in the opinion.

*Messrs. Herminio Díaz Navarro, Cayetano Coll y Cuchí, Tomás Bernardini de la Huerta* and *Manuel A. Martínez Dávila* for petitioner.

*Messrs. Foster V. Brown, Attorney General,* and *Jesús M. Rossy, fiscal,* for defendant.

*Messrs. José Tous Soto* and *Willis Sweet* for opposition.

MR. JUSTICE MACLEARY delivered the opinion of the court.

In this case the petitioner, Cayetano Coll y Cuchí, Esq., an attorney-at-law engaged in general practice in the courts of this Island, applied for a writ of *certiorari* directed to Hon. Harry P. Leake, the District Judge of the District of Guayama, to review certain orders of that court fining him $100 for contempt, and suspending him from the exercise of his profession in a certain case until the fine should be paid. The incident had its origin in a contested-election case pending in said court which had already occupied several weeks in the course of its trial and in which many attorneys were engaged and a great number of witnesses examined. During the progress of the trial on the 8th instant, while the discussion of some incidental questions was progressing,

the counsel used certain language which the judge deemed to be improper, and thereupon caused the following order to be entered on the minutes of the court:

"During the oral argument on the part of the plaintiffs in regard to the evidence in the case of Gregorio Valdés Roque, Mr. Cayetano Coll y Cuchí, referring to the witnesses, Attorneys Ramos and Abella, said: 'In regard to the witnesses Ramos and Abella, I am going to begin by stating to the court that I do not believe the statements made by said witnesses, regardless of the fact that they were made under oath.' Thereupon the court indicated to him that he must discontinue his argument, and that he should withdraw the offensive words. And after the discussion of this matter, Mr. Coll refused to withdraw these words, and thereupon the court ordered him to sit down and to discontinue his argument and condemned him to a payment of a fine of $100 for contempt of court on account of his refusal to obey the indications of the judge, and in default of payment definitely to withdraw from the suit."

Thereupon an adjournment was had, and, on the opening of the court on the 9th, counsel declined to pay the fine or to retire from the case as required by the said order, and the court at once caused an order to be made which reads as follows:

"On this day Mr. Coll y Cuchí states in open court that he does not believe he has committed any contempt of court. And in order to make the record clearer, the court declares that yesterday night, during the hearing of the case of Gregorio Valdés, Messrs. Ramos and Abella testified in regard to an incident of little importance which took place in the corridor of the court, and that their testimony had reference to the evidence given by the witness Navarro. Later on, and in the course of the argument in the case, Mr. Coll, referring to the evidence given by said gentlemen, stated as follows: 'With respect to the witnesses Ramos and Abella, I should commence by manifesting to the court that I do not believe the statements of said witnesses even if made under oath.' The court then requested him to withdraw such words, and this he refused to do. A lawyer has the right to argue on the evidence and criticise the testimony of the witnesses; but in the present case the court considers said remarks as unnecessary, gratuitous, and offensive, and conducing to a disagreeable incident in open court. Mr. Coll was given

the opportunity to withdraw the offensive remarks and to proceed with his argument. Mr. Coll refused to comply with the request of the court, and then he was ordered to withdraw said remarks as being offensive to the court, otherwise it would be considered as contempt of court. A discussion arose between Mr. Coll and the court in regard to that fact, and counsel had ample opportunities to withdraw the remarks made without detriment to his dignity; but he refused to do so. Thereupon the court imposed upon him a fine of $100, or, in default thereof, to finally withdraw from the case. At this moment Mr. Coll stated that he had no intention either of paying the fine or of voluntarily withdrawing from the case. And for this reason the court orders that an entry be made on the record withdrawing the name of Mr. Coll as counsel for the complainants, and that from this moment Mr. Coll ceases to take part in open court, in this case.''

The counsel on the 10th made application to this Supreme Court for a writ of *certiorari,* alleging in his petition, among other matters, the following:

''The petitioner alleges that the judge of the District Court of Guayama by making the aforesaid order misused his jurisdiction to such an extent as to exercise the same beyond the limits allowed to him by law, for which reason said order is null and without any effect whatever. And the petitioner further alleges that the District Court of Guayama has no jurisdiction to eliminate his name, as a lawyer, from the record of the aforesaid suit relating to the nullity of elections, thereby injuring in a serious manner the interests of the litigants, who have no possible means whereby to substitute for the present legal representative another who is in the same situation as regards the knowledge of the affair.''

The writ of *certiorari* was duly issued, and the district judge on the 15th made his return, sending up a transcript of the proceedings had in the court and some of the original records in the case, which are very voluminous and which we find it unnecessary to review at length.

In this controversy only two questions are presented which need consideration at our hands. They are: 1. Has a contempt been committed? and 2. Granting that the counsel was in contempt, could the district judge compel him to

retire or strike his name from the case in which the incident occurred? We will take them up in their order.

In regard to the first question, it may be well to examine the record to ascertain exactly what the words were which were deemed offensive and formed the basis of the orders against the petitioner. We may first review the statement made by the district judge in his return on this point. It reads as follows:

"The order (marked No. 1) was then dictated, and during the dictation the court stated that it would like to be certain of the exact words used, and that its recollection was that counsel had said in English that he would not believe Ramos and Abella either in court under oath as witnesses or out of court as men or under any circumstances. Counsel denied the use of those exact words, but stated that that was what he meant to say, and that the court could put those words in the record if it wished. Other counsel, at the request of the court, repeated the phrase used by Mr. Coll, and he having agreed to the words, that phrase was stated in the order."

The exact words appear in the order to be: "In regard to the witnesses Ramos and Abella, I am going to begin by stating to the court that I do not believe the statements made by said witnesses, regardless of the fact that they were made under oath." The statement made by the judge in his return, while it may be explanatory, is not before the court as evidence, but only as the pleading of the defendant.

Then, logically, we must first determine what constitutes a contempt.

Our statute on this subject, among other matters amounting to contempt, declares that punishment may follow the "wilful disobedience of, or resistence offered to or exerted against any lawful writ, mandate, or order issued or made by any such court in a suit or action pending therein." (Rev. Stats. of P. R., par. 2, art. 144, p. 83.)

To the same effect we find a statement in 9 Cyc., p. 8–E. Our statute is similar, though not in identical words, to section 166 of the Penal Code of California. The statute of

that State has been construed several times by its Supreme Court, beginning with the case of *In re Cohen* and *Jones,* 5 Cal., 494. And, later, in the cases of *People* v. *Dwinells,* 29 Cal., 633, and *Spencer ex parte,* 83 Cal., 461; *Crosby* v. *Superior Court,* 110 Cal., 47, and many others. We have also commented on this statute of ours in several cases, and in the case of the actress from Mayagüez held that a failure or refusal of any person to comply with an order which the court had no jurisdiction to make did not constitute a contempt. (*Núñez* v. *District Court of Mayagüez,* [14 P. R., 190], decided March 20, 1908.) If the order made is not a *lawful* one, then no contempt or punishment therefor can be based thereon.

But did Mr. Coll in discussing the testimony exceed the legal limits allowed to counsel and thereby put himself in contempt and merit the punishment assessed against him?

As stated in the Encyclopedia of Law and Practice, the advocate may arraign the conduct of the parties; he may impugn, excuse, justify, or condemn their motives so far as they are developed in the evidence; he may also assail the credibility of witnesses when it is impeached by direct evidence, or by the inconsistency or incoherence of their testimony, their manner of testifying, their appearance upon the stand, or by other circumstances. When such a conclusion becomes a fair inference from the testimony properly before the court, he may even state that perjury has been committed or that a witness has been bribed. (Encyclopedia of Law and Practice, vol. 5, pp. 326, 327, and 328.)

This doctrine is well supported by numerous decisions, of which we cite a few. (*Jones* v. *State,* 50 Tex. Crim. Rep., pp. 195 and 196; *E. St. L. C. Ry. Co.* v. *O'Hara,* 150 Ill., 587; *People* v. *Amaya,* 134 Cal., 539; *Moore* v. *State,* 52 Tex. Crim. Rep., 343–344; *People* v. *Rohl,* 138 N. Y., 621; *People* v. *Ramsey,* 153 Mich., 299.)

One of the cases referred to contains an opinion of Judge

Brooks, of Texas, from which we make a somewhat lengthy extract as follows:

"That during the progress of his argument to the jury in the case of the *State of Texas* v. *Bob Gatlin,* and in open court, said F. L. Snodgrass, in discussing the testimony of witnessess H. N. Beakley and J. M. Crawford, who testified in said cause, with reference to said two witnesses stated and said to the jury, and in the presence and in the hearing of the court, and in the presence and hearing of the witness, in substance and effect, that either Beakley or Crawford (meaning the aforesaid witnesses) were mistaken, or one of them lied　*　*　*.

"Now the question arises, Does the matter set up in the judgment make contempt of court? We are of opinion that it does not. In order to be contempt of court, the trial court must have not only jurisdiction of the person of the relator, but he must also have jurisdiction of the subject matter, and to render the particular judgment rendered. He had jurisdiction of relator, but he did not have jurisdiction of the subject matter, because he did not have the power or legal authority to enter the judgment against relator for the statements made as contained in the judgment. If he did, then it would destroy relator's right to argue the cause of his client in the courts of justice. It is a constitutional right guaranteed everyone tried in the courts of this State to be heard in person and by counsel; and certainly where two witnesses testify, one for and the other against a certain proposition, showing an absolute and unqualified contradiction, there is but one or two conclusions to be drawn—that one or the other testified falsely, or one or the other is mistaken. Relator's argument seems to have been charitable enough, placing it in the alternative. No other conclusion could be drawn from said contradictory statements but that one had testified falsely or had been mistaken. This seems to have been a strong circumstance in the trial of the case, and certainly relator not only had the right, but it was his duty to his client, to comment upon and make manifest the fact that Crawford, defendant's witness, had told the truth, and that Beakley had not told the truth. Courts will look with much allowance upon the zeal and partisanship of counsel representing their clients in the courts. Without zeal, and without an honest and fervent desire to have everything done and to do everything that can be done within his power that is honorable to promote the interests of his client and secure him a fair and impartial trial, the object of counsel would be destroyed and the bar would soon fall

into disrepute. In Duncan's case, 42 Texas Criminal Reports, 661; 2 Texas Court Reporter, 402, a question very similar to the one now under discussion was before us, and, among other things, we said: 'We wish to say that the power of the court is official—judicial, and not personal—and the relations of court and attorney are correlative. Courts may, will, and should enforce judicial power and functions when necessary; yet this must be done in a manner sanctioned by law and in consonance with judicial dignity, and with due regard to the rights of parties to be affected. Attorneys are bound and will be held to obey legal orders of courts, yet the court should invoke its judicial authority under the law and in obedience thereto. The relationship of courts and attorneys, bench and bar, are reciprocal, and each, in their proper sphere, is clothed with powers, rights, and priviledges which are to be recognized and respected by the other. These relations should be recognized and respected alike by bench and bar, and, being carefully kept in view and followed as rules of action and conduct, will avoid friction.' We would not be understood as holding that the trial court has not the right to maintain the decorum of the courtroom, nor would we be understood as holding that the court could not require relator's argument to be limited to the facts in evidence, or limit his address to the jury to rational, decent, and decorous deductions from the facts in evidence. Only this limitation, and nothing more, can be placed upon arguments of attorneys by the trial court. We are at a loss to know how relator could have commented upon the testimony of the conflicting witnesses otherwise than as he did. Perhaps relator could have avoided placing the testimony of said witnesses before the jury as either a lie or mistake, by saying that one of the parties was mistaken. This would still have left the jury to infer, if they desired to do so, that it was a wilful mistake, and hence a lie. Be this as it may, it was a legitimate character of argument to be used in the trial of the case, as disclosed by the affidavits on file. Courts must not attempt to invade the province of counsel and dictate as to the character of argument to be made upon any given state of facts other than as indicated above. We do not think relator violated either the letter or spirit of the law with reference to contempts; but, on the other hand, we think his argument was legitimate and germane to the facts being discussed, and the infliction of the fine by the trial judge was wholly unwarranted by the law and facts adduced upon the trial thereof.''

We cannot, therefore, say that counsel had gone beyond

the limits of the law in his criticism of the testimony of the witnesses, whatever may be our view of the policy or the bad taste displayed in the use of such very caustic words.

The order of the court must have been a lawful one or it cannot be held to be entitled to respect and obedience. The error of the court in adjudging the words used by counsel, in commenting on the evidence of the witnesses, to be a contempt vitiated all subsequent action founded thereon; and both orders entered herein, being made without jurisdiction, are therefore void.

It will be observed that the offensive remarks were used by counsel in introducing his comments on the testimony, which he was not allowed to finish. He was interrupted by the court with a peremptory demand that he should retract the words used, and it seems that an extensive colloquy ensued, lasting for 15 minutes, which could not have been productive of any beneficial result, and was unbecoming both to the court and counsel. The words quoted were not in themselves a contempt of court. They were vigorous and may be considered in bad taste. But, in commenting on testimony, counsel must be permitted considerable latitude. It may be that the attorney, if permitted to explain and continue his comments, perhaps would have given good reasons for his incredulity. Whether his belief in regard to the testimony was a material matter or not, it could not affect the result improperly, as the case was being tried before the court and not before a jury.

These words of the attorney certainly do not constitute a contempt of court; and although there might possibly be found such in the act of refusing obedience to the suggestion to retract them, for the reason that this might be necessary for the preservation of order, nevertheless we need not take that into consideration in view of the impropriety of the punishment. Although the court may have been justified in fining the counsel to the amount fixed in the order, authority was lacking to strike his name from the list of attorneys in

the case and to require him to cease exercising his functions therein.

Then the second question arises for consideration. What power does a district court in Porto Rico have to suspend an attorney from the exercise of his functions as an officer of the court, or to partially do so, by striking his name from the docket as an attorney in a particular case? No such authority exists.

Under our laws, the district courts have no jurisdiction to admit attorneys and counsellors to practice, nor can they be suspended or disbarred by the action of these courts. These functions reside exclusively in the Supreme Court of Porto Rico, and the method of their exercise is precisely marked out by the statute. (Revised Statutes of Porto Rico, sec. 39 to 43 and secs. amendatory thereof. Session Acts of 1909, pp. 100–102; secs. 9 and 10 of Act of March 11, 1909.) It is, however, contended that the action of the court in the present case was neither a suspension nor a disbarment. It was not a disbarment, but it certainly was a suspension, extending to the case on trial and lasting during its progress in the district court and until its conclusion.

Such was the nature of the punishment imposed for the supposed contempt, that in imposing it the court was certainly without authority in the statute law of Porto Rico. Our law of contempt gives authority to the courts of record, of which the district court is one, to punish by fine not exceeding $200 and imprisonment not exceeding thirty days, or both. (Revised Statutes of Porto Rico, sec. 145. On nonpayment of fine the delinquent can be incarcerated within legal limits until the fine is paid. These methods are the only ones prescribed by the statute for the punishment of contempt. They have heretofore been found sufficient for the enforcement of order and the maintenance of the prestige and dignity of all our courts of justice.

But it is urged with great earnestness and ingenious argument that all courts have the inherent power to punish

for contempt and that the punishment is left to their discretion in the particular case calling for its exercise. Several authorities are cited to sustain this proposition, among others; the case of *Robinson ex parte* in 86 U. S., on page 505.

The opinion in that case, delivered by the late Mr. Justice Field, in part reads as follows:

"The power to punish for contempts is inherent in all courts; its existence is essential to the preservation of order in judicial proceedings and to the enforcement of the judgments, orders, and writs of the courts, and consequently to the due administration of justice. The moment the courts of the United States were called into existence and invested with jurisdiction over any subject they became possessed of this power. But the power has been limited and defined by the Act of Congress of March 2, 1831. The act, in terms, applies to all courts; whether it can be held to limit the authority of the Supreme Court, which derives its existence and powers from the Constitution, may perhaps be a matter of doubt. But that it applies to the circuit and district courts there can be no question. These courts were created by act of Congress. Their powers and duties depend upon the act calling them into existence, or subsequent acts extending or limiting their jurisdiction. The act of 1831 is, therefore, to them the law specifying the cases in which summary punishment for contempts may be inflicted. * * *.

"The law happily prescribes the punishment which the court can impose for contempts. The 17th section of the Judiciary Act of 1789 declares that the court shall have power to punish contempts of their authority in any cause or hearing before them, by fine or imprisonment, at their discretion. The enactment is a limitation upon the manner in which the power shall be exercised, and must be held to be a negation of all other modes of punishment. The judgment of the court disbarring the petitioner, treated as a punishment for a contempt, was, therefore, unauthorized and void.

"The power to disbar an attorney proceeds upon very different grounds. This power is possessed by all courts which have authority to admit attorneys to practice. But the power can only be exercised where there has been such conduct on the part of the parties complained of as shows them to be unfit to be members of the profession. Parties are admitted to the profession only upon satisfactory evidence that they possess fair private character and sufficient legal learning to conduct causes in court for suitors. The order of admis-

sion is the judgment of the court that they possess the requisite qualifications both in character and learning.'' (*Ex parte Robinson*, 19 Wall., 86 U. S., pp. 510, 511, and 512.)

Then this inherent power of the courts in contempt cases must be exercised as prescribed by the statutes and is limited by the bounds fixed by the legislative authority. This is the case with the courts of the nation, and it is the same with our Insular courts. Following the lead of Congress, our Insular Legislature has fixed limits to the discretion of the courts in imposing punishment for contempt. We are bound by those laws, as well as all others, and must follow them in the exercise of all our judicial powers inherent or otherwise. The government of Porto Rico, like that of Massachusetts and every other State in the Union, is a government of laws and not of men.

It is argued that the Supreme Court of Porto Rico could, on a proper occasion arising, order any lawyer engaged in arguing a case to retire from it and suspend his functions until he complied with the orders of the court. Whether that is so or not, the district courts in Porto Rico have no such power. Suspension, even for a limited time and relating only to a particular case, is beyond their jurisdiction. (Statutes previously cited.) And, of course, any order made by any court without jurisdiction is clearly void. The District Court of Guayama, in the present case, had no authority or jurisdiction to impose on counsel the alternative of paying a fine or retiring from the case he was trying before it, nor to strike his name from the record of the case as counsel. As is said in the case of Robinson, the power being given by statute to punish contempts by fine and with imprisonment, is a denial to the courts of all other modes of punishment. That there were several other attorneys in the same case does not alter the matter in the least. The jurisdiction is lacking and the orders made were, therefore, void.

Reference has been made by counsel to the powers conferred on every court by section 7 of the Code of

Civil Procedure, the fifth paragraph of which gives them authority "to control, in furtherance of justice, the conduct of its ministerial officers and of all other persons in any manner connected with a judicial proceeding before it in every matter appertaining thereto." This is a general power conferred on all courts in the Island, and it must be exercised in conformity with existing laws and not in violation of them. The Code of Civil Procedure, in which this provision is found, was passed for the purpose of regulating the methods of conducting litigation and judicial proceedings generally, but it does not interfere with other laws applied to particular matters, of which contempt is one; and the various punishments prescribed by our laws afford numerous examples. It is a well-known canon of construction that general and specific provisions in apparent conflict, whether in the same or different statutes and without regard to priority of enactment, may subsist together, the specific qualifying and supplying exceptions to the general. (*Townsend* v. *Little,* 109 U. S., 512, and cases there cited.)

Then, as the words for which the counsel was fined did not constitute a contempt, and although his subsequent conduct might possibly have done so, as the court was without jurisdiction to enforce the payment of the fine by striking the name of the attorney from the case, both the orders made by the court, of which complaint is made herein, must be vacated and the status of the attorney left in the condition in which it was prior to the entry thereof. An appropriate judgment should be rendered herein to effect this result.

*Petition granted.*

Chief Justice Hernández and Justice Aldrey concurred.
Justices Wolf and del Toro dissented, the former wholly and the latter in part.

### DISSENTING OPINION OF MR. JUSTICE DEL TORO.

I cannot agree entirely with the opinion nor with the

decision of the majority of the Justices of this Supreme Court.

It is perfectly clear to me that the attitude assumed towards the District Court of Guayama by the attorney applying for this writ constitutes contempt of court. The case was one of election contest. Many attorneys appeared in defense of the interests of both parties. The direction of the case was naturally difficult. For the sake of justice and in behalf of the prestige of the court and of the attorneys postulating therein and who formed part of the same, the judge, in the discharge of his duties, was not only obliged to decide in accordance with law such questions as might arise, but was also obliged to maintain and insure order and urbanity during the course of the argument.

If we consider all these circumstances we shall have to conclude that when the Judge of the District Court of Guayama called the attention of the attorney who applies for this writ to the words uttered by him in referring to two of the attorneys for the opposing parties who had testified as witnesses, the judge acted rightly and with the clear intention of preventing a conflict entirely unnecessary.

If we analyze later occurrences, the argument which took place between said applicant and the judge of the district court, the insistence of the judge on the withdrawal of the statements without dishonor to the attorney who made them, the attitude of said attorney, and the final order of the court and disobedience thereof, we cannot see that any other conclusion can be reached but that the applicant placed himself in a position of frank, open, and insistent disobedience to an order of the court made in the exercise of the power conferred upon it by law, and in the discharge of the duties imposed upon it thereby.

However, the power of the district court to remove the applicant from the direction of the principal action does not appear to me clear.

The Legislative Assembly of Porto Rico has determined

the penalties that may be imposed upon persons guilty of contempt. Such penalties, fine, or imprisonment are sufficient to guarantee the proper operation of the courts, and they should abide by the same.

Moreover, to remove the applicant from the direction of the action in question would be equivalent to his direct suspension from the practice of his profession, in a certain case at least, and the power to suspend or disbar attorneys is reserved by law to the Supreme Court of Porto Rico.

In virtue whereof I am of the opinion that that part of the orders made by the District Court of Guayama decreeing that the applicant, Cayetano Coll, be removed from the direction of the action of election contest brought by *Genaro Cautiño et al.* v. *José Muñoz Vázquez et al.* was in excess of its jurisdiction and should be annulled.