PEOPLE *v.* LAPIDUS.

1. CRIMINAL LAW—EVIDENCE—CONFESSIONS—CORPUS DELICTI.
   The reception in evidence of an alleged confession made by
   respondent while in jail was not error, although the testi-
   mony tending to show the *corpus delicti* was unsatisfactory.

2. SAME—SIMILAR OFFENSES.
   As proof of prior offenses or arrests cannot be received to
   establish the offense charged, it was error to permit a witness
   to testify that respondent had admitted making a business
   of theft.

Exceptions before sentence from Ottawa; Padgham, J.
Submitted June 23, 1911. (Docket No. 118.) Decided
September 29, 1911.

Bennie Lapidus was convicted of larceny. Reversed.

*Diekema & Kollen* and *James H. Thompson,* for
respondent.

*Louis H. Osterhous,* Prosecuting Attorney, for the
people.

BROOKE, J. Respondent, who was convicted of larceny
in a store in the daytime, brings his case to this court for
review upon exceptions before sentence.

It appears from the record that respondent entered the
clothing store of the Lokker-Rutgers Company, in the
city of Holland, at about the noon hour. The establish-
ment seems to be a large one; some eight clerks being
employed. Respondent went up to a counter behind
which stood a clerk, and announced a desire to purchase a
pair of pants of a particular size and color. The clerk
selected a pair, neither of the size nor color required, and
displayed them to respondent, who said it was too dark
where he was, and walked toward the front of the store

for the ostensible purpose of examining the pants. Here, the clerk testifies, respondent stood facing toward the north, where it was darker, rather than toward the south, where it was lighter, and in close proximity to another counter, behind which were shelves containing clothing. During his alleged examination, respondent stood about 2½ feet from one of these shelves. In a few moments he returned to the clerk, who was waiting, and announced that the pants did not suit him. Respondent wore a long raincoat at the time, and upon his return to the counter the clerk, who was serving him, became suspicious that he had stolen some merchandise and concealed it beneath his coat. The clerk then came from behind the counter and demanded to see what respondent had beneath his coat, and himself opened the top button.

The clerk testified further:

"Just as I touched my hands here, he asked me what I meant by opening his coat, or wanted. I told him I wanted to see what he had under his coat. He asked me what business I had with that. I told him that was my business and not his. I told him then I wanted that coat opened; then he started to open the coat.

"*Q.* Just show how it was done.

"*A.* If a person's coat is buttoned, it is buttoned this way. In opening a coat, you merely open it in this way. [Illustrating.] Instead of that, he opened—this top button was open; I had opened that, and at the same time when he had his coat opened, he being short, the long cravenette came nearly to the floor—standing kind of faced to the counter. I opened his coat and looked in here; I didn't see anything there, and walked back of the counter. Then it seemed he was very mad. He said I had insulted him for thinking he had come there to steal something of us. He asked me if I thought he stole anything. I said I didn't know. I said if I made a mistake I asked to be pardoned, but I said, in my opinion, I didn't think I had made any mistake at all. Then, after grumbling a while —not grumbling, but talking as though he felt very much offended—he left the store.

"*Q.* Did he pick up the pants off the floor?

"*A.* Yes; I forgot that. While he was telling me he felt so very much offended, he said, 'I suppose you think

I stole this pair of pants also,' and he picked up two pairs of pants from the floor that were doubled in with each other and laid them on the counter."

On cross-examination this witness testified:

"*Q.* Did you see him put any pants under his clothes?
"*A.* No, sir.
"*Q.* Did you see any pants under his clothes?
"*A.* No, sir.
"*Q.* You didn't see him with any pants whatever, except those you gave him, did you?
"*A.* No, sir."

Another clerk testified, in part, as follows:

" I was about 25 feet further back than where this gentleman was standing. I saw the pants drop on the floor—two pairs of pants. Just as I walked up past him, he picked them up and laid them on the counter, and I heard him say to Mr. Beukes, ' Here is a couple pair of pants lying on the floor. I suppose you thought I was trying to steal them.'
"*Q.* Were those pants on the counter?
"*A.* I couldn't tell whether they were or not.
"*Q.* You didn't see them there?
"*A.* No, sir.
"*Q.* On what foot did they fall?
"*A.* On his left foot.
"*Q.* What did he do with them?
"*A.* Was trying to kick them off from his foot."

On cross-examination this witness testified:

" That he testified in the court below that the first he saw of the pants was when he saw him kind of kick them away; that now he swears he saw them drop."

The testimony of these two witnesses constitutes practically all the direct evidence of respondent's guilt. The people then offered the testimony of the sheriff, deputy sheriff, and others as to certain admissions or confessions alleged to have been made by respondent while in custody. This testimony was received over the objection of respondent's counsel, who urged that until the *corpus delicti* had been proved no evidence of alleged confessions was admissible.

There is abundant authority to the effect that the *corpus delicti* cannot be proved by the naked extrajudicial confession of the accused, but we are not prepared to say that the direct evidence, slight and unsatisfactory as it was, constituted no evidence of respondent's guilt.   Where there is any evidence of the *corpus delicti dehors* the confessions, the confessions themselves become admissible.   *People* v. *Hess,* 85 Mich. 128 (48 N. W. 181); *People* v. *Ranney,* 153 Mich. 293 (116 N. W. 999, 19 L. R. A. [N. S.] 443).

During the examination of John Sanstrom, one of the people's witnesses, as to the alleged confessions made by respondent, he said that he had had a free and voluntary conversation with respondent without duress or promise of reward.

"*Q.* What was it ?
"*Mr. Lillie:* The same objection as to the others.
"*The Court:* He may answer.
"*Mr. Lillie:* An exception.
"*A.* He told me he took them pants with the intention of stealing them, and then when he saw that he was caught he let them drop.
"*Q.* With reference to this being the first time that he was caught ?
"*Mr. Lillie:* I object to that as being incompetent.
"*The Court:* Let him state if he said anything about it.
"*Mr. Lillie:* An exception.
"*A.* He told me that he made a business of that.
"*Mr. Lillie:* I ask to have that stricken out.
"*The Court:* Let it stand.
"*Mr. Lillie:* An exception."

On cross-examination the witness testified that he (the witness) said nothing to respondent at all, and that all respondent said to him was that he took the pants with the intention of stealing them, and when he saw he was caught he let them drop.

We think that the testimony of this witness, as it appears in the record, is highly incredible.   Aside from that, the portion of it relating to the commission of similar

offenses at other times was clearly incompetent. Proof of another offense or of prior arrests is not admissible to convince a jury that it is probable that the offense charged has been committed. There are exceptions to this rule, but the case here considered is not one of such. *People* v. *Wakely*, 62 Mich. 297 (28 N. W. 871); *People* v. *Jacks*, 76 Mich. 218 (42 N. W. 1134); *People* v. *Lonsdale*, 122 Mich. 388 (81 N. W. 277); *People* v. *Ascher*, 126 Mich. 637 (86 N. W. 140).

The respondent did not take the stand nor offer evidence of his good character. Several affidavits are printed in the brief of respondent's counsel, and an affidavit of respondent himself was, by permission of the court, filed with the clerk at the time of the argument. While these affidavits form no proper part of the record and have not been considered, they are ordered returned with the remittitur, and the attention of the trial court is directed thereto. If there is a scintilla of truth in that filed by respondent, it merits serious consideration by the trial court, and a searching investigation should be made.

The judgment is reversed, and a new trial ordered.

MOORE, MCALVAY, BLAIR, and STONE, JJ., concurred.