PEOPLE *v.* PETROPOULAPOS.

1. APPEAL AND ERROR—MOTION FOR NEW TRIAL—WAIVER—WEIGHT OF EVIDENCE NOT BEFORE COURT. ·

   Removal of a case to the Supreme Court by writ of error, while a motion for new trial was pending, waived the motion, and this court cannot pass upon the question of whether the verdict is against the weight of the evidence.

2. CRIMINAL LAW—CONSTITUTIONAL LAW—SHARING IN PROCEEDS OF PROSTITUTION—ISSUES PRESENTED.

   In a prosecution for knowingly sharing in the proceeds of prostitution, under Act No. 389, Pub. Acts 1919, said act will not be declared unconstitutional as an infringement of the personal rights of defendant merely because a foolish use of it may be imagined resulting in interference with the rights of relatives and friends, especially where no such question has arisen.

3. SAME—WITNESSES—EVIDENCE OF OTHER LIKE OFFENSES—ADMISSIBILITY.

   Where defendant claimed the prosecution was a "frame-up" for the purpose of terminating his valuable lease and that he never had any woman in the place to commit

acts of prostitution, he opened the door to let in testimony by witness as to acts of prostitution in the proceeds of which he shared, other than those charged in the information, if such testimony was otherwise inadmissible.

4. SAME—CRIMINAL INTENT—EVIDENCE OF OTHER LIKE OFFENSES. It being necessary in the case at bar to show a criminal intent, such testimony was admissible for that purpose and the case is, therefore, an exception to the general rule barring such testimony.

5. SAME—REBUTTAL—EVIDENCE—ADMISSIBILITY.
Testimony of a police officer, in rebuttal of defendant's claim that he had no prostitutes around him, that he arrested a common prostitute at defendant's place of business, and took her and defendant to court, where she was sentenced, is not open to the objection that the record of the conviction is the best evidence, since the record would not show the arrest at defendant's rooming house, and especially where defendant had testified that he was in court when the woman was sentenced.

Error to recorder's court of Detroit; Heston (William M.), J.   Submitted October 14, 1921.   (Docket No. 186.)   Decided December 22, 1921.

Vassiteous Petropoulapos was convicted of sharing in the proceeds of prostitution, and sentenced to imprisonment for not less than 2½ nor more than 5 years in the State prison at Jackson.   Affirmed.

*D. P. Cassidy* and *John G. Cross,* for appellant.

*Merlin Wiley,* Attorney General, *Paul W. Voorhies,* Prosecuting Attorney, and *Harry S. Toy,* Assistant Prosecuting Attorney, for the people.

WIEST, J.   Defendant was convicted, under the statute, Act No. 389, Public Acts 1919, making it a felony to knowingly share in the proceeds of prostitution, and upon evidence that he was the keeper of a rooming house, and engaged Emma Smith, a com-

mon prostitute, to come to his place and ply her trade under his supervision and that he took one-half of her earnings. The evidence brings the case clearly within the provisions of the statute.

Defendant claims the verdict is against the weight of the evidence. The record of the calendar entries shows a motion for a new trial but no disposition made thereof or exceptions. If defendant moved for a new trial, and while such motion was pending removed the case to this court by writ of error, he thereby waived his motion. We cannot upon this record pass upon the question of whether the verdict is against the weight of the evidence.

It is claimed that the statute is—

"An unconstitutional invasion of personal rights of defendant. It is a legislative interference upon the ground of correcting the morals of the prostitute. Relatives and friends of the woman, her family, agents of charities, and others who may know that the woman gets her money only by immoral living, may not receive her gift with impunity. They are punished to correct her conduct. One who may have no part in the crime of the woman, and may not know of it till after it has been committed, receives her gift and becomes as guilty of a felony as one who took part in the crime or was a panderer."

A legislative enactment is not to be declared unconstitutional merely because a foolish use of it can be imagined. Just how the statute making it a crime to share in the earnings of a common prostitute constitutes an unconstitutional invasion of the personal rights of defendant is hard to conceive. It will be time enough to consider the rights of relatives and friends of a prostitute when such a question arises.

At the trial the prosecution called Marian Johnson to show that on the day before the date alleged in the information and the day after that date, she was at defendant's place plying her trade as a prostitute, and that defendant shared in her earnings. Upon

objection this testimony was excluded. In making his defense defendant claimed the charge against him had been "framed" to get his valuable lease away from him, and offered a notice from the owners of the property, dated August 20, 1920, declaring the lease "void and ended," because he had used and permitted the premises to be used for lewdness, assignation and prostitution. Defendant testified that he did not get such notice until after his arrest; that he never got any money from Emma Smith; never told her to go in a room and have intercourse with men, and that "Everything is a frame up;" that Emma Smith worked one day and he did not get any money from her that day; that she did not go into any room with men that day, and that he did not allow such a thing.

"It was just two months ago that the men that leased me this property wanted to break the lease, and they are the ones that have started this action against me so as to break my lease."

He was asked this question:

"You say also that you have not had anybody, any woman, in that place to commit acts of prostitution?"

An objection was interposed on the ground that defendant was not charged with running a house of prostitution and the trial was not one to break the lease. The objection was overruled and defendant answered:

"No, I had a woman in there to fix the beds. I never had a woman staying at my place 166½ Monroe, to go to bed with men."

Later Marian Johnson was recalled and over objection permitted to testify that she was at defendant's place on August 19th and 21st, 1920:

"When I went up there I was engaged to go up and look after his rooms and, of course, I asked him about the wages and he said 'I don't pay my girls

any salary because they come up here to make money for me and them at the same time;' "

that she was a prostitute and gave defendant $5 on August 19th and $8 on the 21st, or one-half her earnings as a prostitute on those days.

Was such testimony admissible? The defendant in making the claim that the prosecution was one to saddle on him an unfounded charge of sharing in the money earned by Emma Smith as a prostitute upon his premises, and thereby deprive him of his valuable lease, surely opened the door for such testimony, and no authority need be cited to sustain the ruling of the court. The court had shut such testimony out, but the defendant, not content, paved the way, if the testimony was not admissible before, to let it in, and we cannot save him from the result of his own act. The testimony, however, was admissible under the rules of criminal evidence.

Under the statute the prosecution had to show not only money paid by a prostitute to defendant, but as well his knowledge, concern or interest in the method by which it was earned, and that he really was a participant by way of pecuniary sharing in the proceeds of her prostitution.

*State* v. *Schuman*, 89 Wash. 9 (153 Pac. 1084, Ann. Cas. 1918A, 633), was a prosecution for accepting the earnings of a prostitute. In that case:

"Three other women, all confessed prostitutes, were permitted to testify, over appellant's objection, that, at about the time charged in the information and by arrangement with the appellant they had paid for permission to frequent the same cafe in aid of their calling by leaving money in the same sums and in the same place for the appellant as testified to by the prosecuting witness. It is urged that this was prejudicial error, in that the evidence related to independent offenses. It is, of course, a general rule that evidence of the commission of a separate and distinct crime is inadmissible to aid the conviction of a de-

fendant for the crime charged.    There are, however, exceptions to this rule as thoroughly established as the rule itself.    Where the purpose is to show a system or general design from which a criminal intent or purpose may be inferred in the commission of a particular act charged, collateral offenses of the same character and perpetrated in the same way, though not otherwise connected, can always be put in evidence as tending to establish the system or design (quoting 1 Wharton, Cr. Ev. (10th Ed.) p. 146, § 39).    *    *    *

"The similarity of the other offenses with that testified to by the prosecuting witness, the identity of the agreement with the appellant under which the money was paid by other prostitutes, and the identity and manner, place and amount of the payments, all had a direct tendency to prove a consistent general system, scheme or design evidencing a criminal intent and purpose."

Defendant claims that the following cases establish that it was error to admit such testimony: *People* v. *Henry*, 129 Mich. 100; *People* v. *Jacks*, 76 Mich. 218; *People* v. *Minney*, 155 Mich. 534; *People* v. *Schweitzer*, 23 Mich. 301; *People* v. *Thompson*, 122 Mich. 411; *People* v. *Williams*, 159 Mich. 518; *People* v. *Lapidus*, 167 Mich. 53; *Lightfoot* v. *People*, 16 Mich. 507; *People* v. *Lonsdale*, 122 Mich. 388; *People* v. *Brown*, 142 Mich. 622; *People* v. *Coston*, 187 Mich. 538; *People* v. *Davis*, 52 Mich. 569.

The cases cited are readily distinguishable from the one at bar.    It will be observed that in most of those cases the intent followed as a necessary conclusion from the acts constituting the crime charged.    In the case at bar the criminal intent did not follow from the mere receiving of the money, and the case is, therefore, an exception to the general rule and governed by *People* v. *Henssler*, 48 Mich. 49; *People* v. *Sessions*, 58 Mich. 594; *People* v. *Wakely*, 62 Mich. 297; *People* v. *Kemp*, 76 Mich. 410; *People* v. *Hawkins*, 106 Mich. 479; *People* v. *Seaman*, 107 Mich. 348 (61 Am. St. Rep. 326); *People* v. *Summers*, 115 Mich. 537.    Other

cases might be cited to the same effect but we forbear.

In rebuttal of the claim of defendant that he had no prostitutes around him the prosecution called a member of the police force, and he testified that on the 11th day of December, 1919, at defendant's place of business he arrested a common prostitute and took her and defendant to court where the woman was sentenced to pay a fine of $25 or be imprisoned 30 days. It is claimed that the record of the conviction of the woman was the best evidence, and it was error to permit the officer to testify thereto. The record would not show the arrest at defendant's rooming house, and defendant himself had testified that he was in court when the woman was fined $25.

We find no reversible error, and the conviction is affirmed.

STEERE, C. J., and STONE, CLARK, BIRD, and SHARPE, JJ., concurred. MOORE and FELLOWS, JJ., did not sit.